ELBLUM HOLDING CORPORATION, A CORPORATION, PLAINTIFF-APPELLEE, v. HARRY MINTZ, DEFENDANT-APPELLANT.

Argued May 3, 1938—Decided August 18, 1938.

Before Justices TRENCHARD and PERSKIE.

For the appellant, *Israel B. Greene.*

For the appellee, *Milton M. Unger.*

The opinion of the court was delivered by

PERSKIE, J.   Does a president of a corporation, as such, have authority to employ and authorize an attorney to institute suit at law in behalf of his corporation?

Plaintiff is a corporation engaged in the real estate business.   Its stock is owned equally by two families who are at cross-purposes with each other.   An executive committee, consisting of the president, Abraham Elgart, a member of one faction, and the treasurer, Harry Mintz, a member of the other faction, manages the business during the intervals between meetings of the board of directors.   The present suit was started at the behest of the president without official sanction of the directors.   It is an action against the treasurer of the corporation in his individual capacity, upon two leases. The allegations are that the defendant held over after the expiration of one lease, and at the time of suit, on November 23d, 1937, owed the corporation $11,400 in rent.   The second lease in suit was for an office, upon a month to month basis, and it is alleged that $270 rent is due thereon.   After service of the complaint the defendant obtained a rule to show cause from Mr. Justice Parker why the complaint should not be dismissed for want of authority to file same.   Affidavits were submitted.   Defendant's affidavits showed, in substance, that neither the board of directors nor the executive committee authorized the bringing of the suit, and that the by-laws of the corporation do not expressly sanction such action by the president.   Affidavits by the president of the corporation, on the other hand, disclose that the corporate stock is equally

divided between the Elgart and Mintz families; that it is impossible to secure anything except an equally divided vote upon controversial corporate matters as between the equally contracted interests of the respective families; that defendant owed rent and that his failure to pay seriously hampered and prejudiced the corporation since it had substantial indebtedness by way of a $760,000 mortgage; a yearly tax bill of approximately $26,000; insurance premiums of about $7,000, and an indebtedness to banks in the sum of some $18,000. The president of the corporation also stated the impossibility of securing corporate sanction to bring the suit; and alleges that he always managed the properties in question, and because of the seriousness of the situation concluded that it was necessary to take action. Pending the determination of the question raised by the rule to show cause, defendant was given leave, without prejudice or waiver of the right of either of the parties, to file an answer and counter-claim. Subsequently, the rule to show cause was discharged, and a petition for rehearing denied.

Defendant, upon the authority of *Key* v. *Paul,* 61 *N. J. L.* 133; 38 *Atl. Rep.* 873, appeals from the disposition thus made by Mr. Justice Parker.

*First:* We are met, *in limine,* with a procedural question. Plaintiff challenges defendant's right of appeal. That challenge, exclusive of plaintiff's right to bring this suit on the theory of a "course of dealing" which, it is claimed, formed no part of the determinations under review, is rested upon the premise that the order sought to be reviewed was a discretionary one and not involving the substantial rights of the parties. That premise is supported with the observation "that defendant may still submit his defense and have his day in court, and if after final judgment is rendered against him, may then appeal from such finding." While there is much force to the point thus made, and while Mr. Justice Parker was of the mind that the application for a stay was based upon "purely technical" grounds, the meritorious question involved was presented, argued, considered and determined. A theory of a suit so adopted and pursued is binding upon the respec-

tive parties. *Cf. Lastowski* v. *Lawnicki,* 115 *N. J. L.* 230 (at *p.* 234) ; 179 *Atl. Rep.* 266. At all events, we shall assume that the right of appeal does exist and proceed with our consideration and determination thereof upon the merits.

*Second:* We desire at the outset to mark the fact that the question here requiring decision is one of first impression with us. Our courts have not heretofore, so far as industry of counsel and this court reveal, decided whether a president of a corporation, *qua* president, has the authority to employ and authorize an attorney to institute a suit in behalf of his corporation. Nor is there any concordance in the decisions of our sister states or in the writings of eminent and acknowledged scholars upon the subject.

Most generally stated there is, on the one hand, a respectable body of authority that, apart from the acts done by a president of a corporation in the course of its ordinary business, of acts done in pursuance of clothed, apparent authority, of acts done as incidental to his office, the powers of a president of a corporation to do a particular act depends upon the powers conferred upon him, either by statute, or by charter of his corporation, or by the by-laws, or by the directors thereof. And the mere fact he is president, without more, does not imply that he has any greater power than any other director. The following are some of the authorities so holding. 4 *Cook on Corporation* (*8th ed.*) § 716 ; *Ballentine, Private Corporations* 341, § 105 ; *Ney* v. *Eastern Iowa Telephone Co.* (*Iowa*), 144 *N. W. Rep.* 383 ; *Ashuelot Manufacturing Co.* v. *Marsh* (*Mass.*), 1 *Cush.* 507 ; *Campbell* v. *Hanford* (*Cal.*), 227 *Pac. Rep.* 234.

On the other hand, there is also a body of respectable authority to the effect that a president of a corporation, as such, may employ and authorize counsel to institute a suit in behalf of his corporation. *Fletcher Cyclopedia Corporations* (*permanent ed.*), ch. 4, § 618, ch. 51, § 4216 ; *Dent* v. *People's Bank of Imboden,* 118 *Ark.* 157 ; 175 *S. W. Rep.* 1154 : *Citizens National Bank of Kingman* v. *Berry,* 53 *Kan.* 696 ; 37 *Pac. Rep.* 131 ; *Potter* v. *New York Inf. Asylum,* (*N. Y.*), 44 *Hun.* 367. Which view shall we adopt? The

answer to this question may be facilitated by a brief examination of the organic law of our state concerning corporations and the trend of our decisions on the point involved.

*Third:* Under our Corporation act (*Rev. Stat.*, title 14, *"Corporations, General"*) the business of every corporation is managed by its directors (*Rev. Stat.* 14:7-1), and if there be a provision in the certificate of incorporation for an executive committee, the latter, appointed by the directors, may exercise the powers of directors during the intervals between meetings of the directors. *Rev. Stat.* 14:7-4. Every corporation, of course, has the power to adopt by-laws providing for the management of its property and the regulation and government of its affairs. *Rev. Stat.* 14:3-1. The president of a corporation is a statutory officer. *Rev. Stat.* 14:7-6.

In light of these provisions, our courts have held that the president of a corporation, as such, may, without special authority, perform all the acts, which either because of usage or necessity, are incidental to his office, and may bind the corporation by contracts arising in the usual course of its business. And beyond this he, as president, has no more control over the corporate funds than any other director. *Stokes* v. *New Jersey Pottery Co.*, 46 *N. J. L.* 237; *Economy Auto Supply Co.* v. *Fidelity Union Trust Co.*, 105 *Id.* 206; 144 *Atl. Rep.* 30; *Knopf* v. *Alma Park, Inc.*, 105 *N. J. Eq.* 299; 147 *Atl. Rep.* 590; *affirmed,* 107 *N. J. Eq.* 140; 152 *Atl. Rep.* 919; *Iback* v. *Elevator Supplies Co., Inc.*, 118 *N. J. Eq.* 90 (at *pp.* 91, 92); 177 *Atl. Rep.* 458; *Murphy* v. *W. H. & F. W. Cane Co., Inc.*, 80 *N. J. L.* 163 (at *p.* 165); 76 *Atl Rep.* 323; *Murphy* v. *W. H. & F W. Cane Co., Inc.*, 82 *N. J. L.* 557, 559; 82 *Atl. Rep.* 854. And we have held that a president of a corporation may in pursuance of a power incidental to his office, take the necessary steps in defense of litigation prosecuted against his corporation in order to preserve the corporate assets. *Beebe* v. *Beebe Co.*, 64 *N. J. L.* 497; 46 *Atl. Rep.* 168.

But, it is argued for defendant, the by-laws specifically limited the powers of the president, as was found by the learned justice, "to that of a moderator at meetings of direc-

tors, of temporary chairman at those of stockholders, and of a clerical nature in making reports and signing papers." *Ergo,* to permit plaintiff to employ counsel to institute a suit at law against a co-director is directly contrary to the contractual relationship created between the stockholders, and thus is an illegal exercise of power. It is further argued for defendant that a suit such as is here sought to be prosecuted will create strife and discord in the internal management of the corporation to the injury of the stockholders and creditors; and that if a president may institute such a suit (which is characterized as a derivative suit) by the same token he may also contract to pay counsel for his services out of corporate funds. And finally, it is argued that the only proper forum to enforce the alleged claim is the court of chancery.

We think that these arguments lack persuasion. Without, of course, trenching upon the equitable jurisdiction which might have been invoked, we are merely concerned with a simple suit brought at law to enforce a rent claim allegedly due the corporation. It is difficult to perceive what greater strife and discord in the internal affairs of the instant corporation can be created by this suit than that which already obtains by reason of the existing deadlock. How the stockholders or creditors will be injured is not made to appear. Costs incident to litigation (including counsel fees) will follow whether the litigation is in the equity or the law branch of our jurisprudence.

We are fully in accord with the views of the learned justice who observed that "what we have here is a case where the president, on the face of things, has undertaken to institute the obvious and proper step to protect the interests of his corporation; and where the defendant, by the same token, has undertaken to prejudice those very interests in favor of his own."

If, as we have seen, a president of a corporation may take the necessary steps in defense of litigation prosecuted against his corporation in order to preserve the corporate assets, so, in reason and justice, he may employ and authorize counsel to institute necessary legal proceedings for the like purpose

of preserving the interests of his corporation. We so hold. For, in each instance the power exercised by the chief executive officer of the corporation is to accomplish the same results. If the president were to fail to exercise the power to protect and defend the assets of his corporation he might well be liable to his corporation for the resultant losses. And so if the president exceeds his power the corporation may likewise look to him for any damages it may have sustained. *American Insurance Co.* v. *Oakley* (*N. Y.*), 9 *Paige* 497, 501.

Accordingly, the order discharging the rule to show cause why the complaint should not be dismissed is affirmed. Costs, however, will abide the ultimate disposition of the cause.